APPENDIX D - REQUEST FOR RELIEF

VII Relief CLAIM I

I am requesting the Court grant me the following relief:

1. $350.00 filing fee for Cause No. CV 16-00154-BLG-JCL

2. $350.00 filing fee for this 42 U.S.C. 1983

3. $500.00 costs in copying and mailing

4. Compensation for the nearly two thousand hours I spent researching, drafting, preparing and filing of these two civil suits. At a price of $100.00 per hour this equals $200,000.00 – This will be used to pay for an attorney to file my Federal Habeas, considering this facility denies inmates access to the courts.

5. The damages lost from the deliberate indifference portion of the Cause No. CV 16-00154-BLG-JCL civil suit are incalculable.

So, in lieu of monetary damages I am requesting the Court Order Core Civic, and the State of Montana, to review their access to the courts, policy 14-8 among others, and provide inmates with some form of computer that allows inmates to type, correct, copy/paste, save and print their legal work.

I also request that the Court Order Core Civic and the State of Montana to provide electronic filing methods for future legal cases.

VII Relief CLAIM II

I understand I cannot sue for my freedom so instead I am requesting the Court grant me the following relief:

1. Lost Wages:
I am a Geologist (B.S. 2010, FSU) I was making $500.00 and on a fast track to $1,200-1,500 per day before being arrested. I am asking for this in compensation equal to the number of days I have spent incarcerated due to their blocking my access to the courts, Starting end of May 2018. Approximately 970 days totaling $1,164,000.00

2. I am also requesting the same relief as Claim 1 in regards to the Court Order Core Civic, and the State of Montana, to review their access to the courts and provide inmates with some form of computer that allows inmates to type, correct, copy/paste, save and print their legal work.
I also request that the Court Order Core Civic and the State of Montana to provide electronic filing methods for future legal cases.

VII Relief CLAIM III

I understand I cannot sue for my freedom so instead I am requesting the Court grant the following relief:

1. Rule Montana's Post-Conviction process as UNCONSTITUTIONAL and misleading.

2. Order the State of Montana set aside $100,000,000.00 to create a "Conviction Integrity Unit" and promote legislation that will provide incarcerated individuals a proper and accurate way to file a collateral attack upon their convictions.

| | |
|---|---|
| **CHAPTER 14:** | **INMATE/RESIDENT RIGHTS** |
| **SUBJECT:** | **ACCESS TO COURTS** |
| **SUPERSEDES:** | **APRIL 1, 1998** |
| **EFFECTIVE DATE:** | **DECEMBER 1, 2002** |
| **FACILITY SUPERSEDES:** | **JUNE 29, 2009** |
| **FACILITY:** | **CROSSROADS CORRECTIONAL CENTER** |
| **FACILITY EFFECTIVE DATE:** | **JULY 1, 2011** |

**APPROVED:   SIGNATURE ON FILE AT CORPORATE OFFICE**
**JIMMY TURNER**
**VICE PRESIDENT, OPERATIONS**

**APPROVED:   SIGNATURE ON FILE AT CORPORATE OFFICE**
**G. A. PURYEAR**
**EXECUTIVE VICE PRESIDENT/ GENERAL COUNSEL**

---

**14-8.1  PURPOSE:**

To establish procedures for allowing inmates the opportunity for access to the court system.

**14-8.2  AUTHORITY:**

Corporate and Facility Policy, State and Federal Laws

**14-8.3  DEFINITIONS:**

Indigent Inmate/Resident - An inmate/resident having maintained a balance of normally at least three dollars ($3.00) or less in their account, physical possession or in both combined for thirty days prior to the request for supplies. However, some facilities may vary due to contract requirements.

The dollar amount used for indigency in this facility is:

**MONTANA- FIFTEEN DOLLARS ($15.00)**

**USMS- THREE DOLLARS ($3.00)**

At this facility, the procedure used for indigency is as follows:

**1.    INMATES MAY APPLY FOR INDIGENT STATUS BY SUBMITTING AN INMATE REQUEST FORM TO THE BUSINESS MANAGER.**

**2.    THE BUSINESS MANAGER WILL IDENTIFY INMATES MEETING CONDITIONS OF INDIGENT STATUS.**

Inmate/Resident - Any adult or juvenile, male or female housed in a CoreCivic facility. Inmates/residents may also be referred to as detainees, prisoners or offenders depending on classification and in accordance with facility management contracts.

**14-8.4  POLICY:**

CoreCivic provides that all inmates/residents, upon request, receive access to paper and other supplies and services to contact legal counsel or representative, courts, and other persons concerning legal matters.   Inmates/residents have the right to present any issue, including the following: challenging the legality of their conviction or their conditions of confinement in accordance with the standard set forth in Lewis v. Casey. Officers, employees or agents of CoreCivic will not interfere with,

**Proprietary Information--Not for Distribution - Copyrighted**
**Property of CoreCivic**

harass, punish or otherwise penalize any inmate/resident as a result of the inmate/resident gaining access to the courts.

**14-8.5  PROCEDURE:**

**A.    ACCESS TO COURTS**

Access to courts will be provided through the availability of legal reference materials and/or contract attorneys/paralegals. Pursuant to Lewis v. Casey, constitutional access to the courts system extends only to assistance with the preparation of **initial pleadings (e.g. Motions to Proceed In Forma Pauperis, Motions for Appointment of Counsel, Petitions for Writs of Habeas Corpus, Petitions for Post-Conviction Relief, Civil Complaints for Section 1983 Claims in state or federal court)**. Constitutional access to courts provided by the State (or its private contractor) does not extend to assistance with any legal proceedings beyond the **initial pleading** stage. Though inmates/residents have the right to present issues to the court system, CoreCivic is only required to assist inmates/residents in accordance with the parameters outlined in Lewis v. Casey.

1.    LEGAL REFERENCE MATERIALS

    a.    Law books are chosen by CoreCivic's Corporate legal staff to meet the constitutional needs of the inmates/residents or as required by the facility management contract. These legal reference materials may include state or federal criminal substantive and procedural materials, rules of evidence, sentencing guidelines, legal dictionary, materials relating to immigration procedures, inmate rights and rules of court.

    b.    All legal reference materials will be ordered and purchased through CoreCivic's Corporate Purchasing Department.

    c.    Federal and state court forms for filing initial pleadings (i.e. Motions to Proceed In Forma Pauperis, Motions for Appointment of Counsel, Petitions for Writs of Habeas Corpus, Petitions for Post-Conviction relief, Civil Complaint for Section 1983 Claims in State or Federal Court). Will be available for inmates to copy.

    d.    General Rules

        i.    Legal reference materials will be available during hours that facilitate reasonable access by all inmates/residents, including weekends and evenings.

        ii.    If an inmate/resident demonstrates a legitimate need to access the legal reference materials beyond scheduled hours, a request can be submitted to the designated staff. This request will be granted, absent good cause to deny such, and allowed when the inmate/resident is not involved in other scheduled activities.

        iii.    A schedule outlining times available for using the legal reference materials will be posted with the library rules.

        iv.    Library rules will be published by each facility and remain posted.

        v.    The rules will be available in English, and Spanish if necessary.

    e.    Designated Staff Duties

    A designated staff member will be responsible for the following:

        i.    Organizing and maintaining all books, supplements and pocket parts for books housed in the library;

**Proprietary Information--Not for Distribution - Copyrighted-
Property of CoreCivic**

      ii.     Notifying CoreCivic's Corporate Purchasing Department of law books that need to be ordered;

      iii.    Discarding superseded, worn, or damaged materials which are of no significant value to the library collection;

      iv.    Keeping a current inventory of all books housed in the library. The inventory is to list the name of the publication; the number of volumes; the publisher; the year of publication; and the most recent supplement or pocket part date;

      v.     Sending a current inventory to CoreCivic's Corporate Legal Dept. quarterly;

      vi.    Assisting inmates in locating materials in the library, but not giving legal advice;

      vii.   Controlling all inmate movement within the library and preventing damage, destruction and/or theft of material in the library; and

      viii.  Compliance with library/law library rules.

**f.**    **AT THIS FACILITY, ADDITIONAL PROCEDURES CONCERNING LEGAL REFERENCE MATERIALS ARE AS FOLLOWS:**

> **NONE**

**2.**    CONTRACT ATTORNEYS/PARALEGALS

**a.**    Pursuant to <u>Lewis v. Casey</u>, constitutional access to the courts system extends only to assistance with the preparation of **initial pleadings (e.g. Motions to Proceed In Forma Pauperis, Motions for Appointment of Counsel, Petitions for Writs of Habeas Corpus, Petitions for Post-Conviction Relief, Civil Complaints for Section 1983 Claims in state or federal court)**. Constitutional access to courts provided by the State (or its private contractor) does not extend to assistance with any legal proceedings beyond the **initial pleading** stage.

**b.**    Access to the court does not extend to any other proceedings not related to the inmate/resident's imprisonment to include bankruptcy, divorce or child support.

**c.**    The contract attorney/paralegal will perform the legal research only to assist the inmate/resident in filing the <u>**initial pleading or motion.**</u> Any assistance or legal research the inmate/resident may desire <u>**beyond the initial pleading stage**</u> will have to be obtained by the inmate/resident by (1) requesting the court to appoint an attorney to represent him: or (2) contacting an attorney directly to represent him/her at the inmate/resident's expense.

**d.**    If the initial pleading involves a 42 USC sec. 1983 or condition of confinement claim, the inmate/resident should have first availed himself to the Inmate Grievance System. The court will likely dismiss the suit if the inmate/resident fails to exhaust administrative remedies available through the grievance process. Inmates/residents are required to bring a copy of the final disposition of the grievance when they meet with the contract attorney/paralegal. If the issue involves Post-Conviction or Habeas Corpus relief, the inmate/resident should bring a copy of his sentencing, appeal and sentencing calculation documents to the appointment with the contract attorney/paralegal.

**Proprietary Information--Not for Distribution - Copyrighted**
**Property of CoreCivic**

     e.    A contract between CoreCivic and the contract attorney/paralegal establishes the relationship of the attorney/paralegal and the inmate, i.e., the attorney/paralegal represents the inmate's interests not CoreCivic's. In addition, the contract delineates the legal issues that may be dealt with by the attorney/paralegal.

     f.    Request for Services Form

         i.    The Request for Attorney/Paralegal Conference (Form 14-8A) will be readily accessible to the inmates/residents.

         ii.    Envelopes and postage will be available for the inmate/resident to mail the Request for Attorney Services Form to the attorney/paralegal. To avoid any allegations of tampering or interference with the inmate/resident's ability to contact the attorney/paralegal, the inmate will place the request in the envelope and seal it.

     g.    Attorney/Paralegal Schedule

         i.    The attorney/paralegal will establish a schedule to meet with inmates/residents requesting assistance with the preparation of initial pleadings for post conviction and habeas corpus issues involving the inmate's custodial situation and institutional claims personally involving the inmate.

         ii.    A designated staff person at the facility will coordinate the scheduling of inmates/residents for attorney/paralegal conferences.

         iii.    CoreCivic's Corporate Legal Department will monitor inmate/resident demand for services to determine the number of visits and the length of scheduled visits each month to maintain an adequate level of services and assistance to the inmate/resident population.

     h.    **AT THIS FACILITY, ADDITIONAL PROCEDURES FOR CONTRACT ATTORNEY/PARALEGAL SERVICES FOR INMATES/RESIDENTS ARE AS FOLLOWS:**

         **IN ACCORDANCE WITH OFDT FPBDS, DETAINEES HAVE ACCESS TO NOTARY SERVICES TO OBTAIN NOTARIZATION OF DOCUMENTS WHEN THERE IS A LEGAL REQUIREMENT FOR NOTARIZATION. NOTARY SERVICES ARE PROVIDED TO INDIGENT DETAINEES FREE OF CHARGE.**

         **CROSSROADS CORRECTIONAL CENTER DOES NOT HAVE A CONTRACT ATTORNEY.**

**B.    ACCESS TO COURTS FOR SEGREGATED INMATES/RESIDENTS**

    1.    Access to the court system is to be provided to inmates/residents housed in segregation areas.

    2.    Those facilities that provide access to the court system through the use of a contract attorney/paralegal will make the Request for Attorney/Paralegal Conference (Form 14-8A) readily accessible to inmates/residents in segregated housing areas.

    3.    Those facilities that maintain legal reference materials as discussed in 14-8.5.A.1 will facilitate access to such legal materials by inmates/residents housed in segregated areas.

**C.    CORRESPONDENCE EQUIPMENT AND SUPPLIES**

    1.    PAPER/POSTAGE FOR PURCHASE

**Proprietary Information--Not for Distribution - Copyrighted
Property of CoreCivic**

      a.      Inmates/residents may purchase paper, pens and envelopes at the facility.

      b.      Procedures for obtaining and buying paper, pens, and envelopes will be posted at each facility.

      c.      Procedures for obtaining postage will be posted at each facility.

      d.      Typewriter(s) will be available for use to type legal documents or correspondence with the courts.

2.      PHOTOCOPYING SERVICES

      a.      Photocopying services for legal materials to be filed with the courts will be available at each facility for a monetary charge.

      b.      Procedures for photocopying will be posted at each facility.

      c.      Staff copying legal materials for inmates are not to read such materials other than to determine that these materials are legal documents.

3.      INDIGENT INMATES

      a.      Through procedures determined at each facility, CoreCivic will provide paper, pens, and envelopes to Indigent Inmates/Residents.

      b.      CoreCivic will provide postage for privileged mail (e.g. to attorneys or the court system) to Indigent Inmates/Residents in an amount equal to five (5) one ounce letters per week and will not include registered, certified or insured mail.

      c.      Indigent Inmates/Residents may receive three (3) photocopies of each legal document to be filed with the court at no charge unless the state or federal court rules expressly state that more (or less) than that amount is necessary to file with the court.

**D.**      **INMATE-TO-INMATE ASSISTANCE**

In accordance with <u>Shaw v. Murphy</u>, inmates/residents do not have a constitutional right to help other inmates/residents with lawsuits. Unless otherwise mandated by the contracting agency, an inmate/resident's library job duties are limited to assisting designated staff in maintaining and inventorying legal reference materials and porter type duties.

**E.**      **AT THIS FACILITY, ADDITIONAL PROCEDURES REGARDING ACCESS TO COURTS ARE AS FOLLOWS:**

      <u>**NONE**</u>

**14-8.6  REVIEW:**

The General Counsel and the Vice President, Operations will review this policy annually.

**14-8.7  APPLICABILITY:**

All CoreCivic facilities and programs except where contracting agency requires otherwise.

**14-8.8  ATTACHMENTS:**

1.      Form 14-8A - Request for Attorney/Paralegal Conference

2.      Other attachments are as follow:

**14-8.9  REFERENCE:**

<u>Lewis v. Casey</u>, 116 S.Ct. 2174 (1996); <u>Bounds v. Smith</u>, 430 U.S. 817, 97 S.Ct. 1991, 52 L.Ed. 72 (1977); <u>Shaw v. Murphy</u>, 1215 S. Ct. 1475 (2001) and ACA Standards. The ACA Standards for this facility are as follows:

**Proprietary Information--Not for Distribution - Copyrighted
Property of CoreCivic**

ACA Standards:  4-4274 through 4-4284

**Proprietary Information--Not for Distribution - Copyrighted**
**Property of CoreCivic**

## CCA/Crossroads Correctional Center
## Inmate Letter (Kite)*

### Inmate Section

Inmate Name (print): Richard D. Reinert

Inmate Number: 3016727

Cell/Housing: D-216

To: (staff name/department) Library

Date: 11/9/2020

Regarding: Law Library — I need a lay-in for law library to research & work on my Federal Habeas. This is time sensitive.

Thank You

Inmate Signature:

### Staff Reply

Being that you all on Quarantine, WE NEED MORE INFORMATION. WHAT IS YOUR DEADLINE DATE? WHO IS IT GOING TO? CAN WE MAKE COPIES FOR YOU & BRING THEM TO YOUR HOUSE?

Staff Signature: R. Mum

Title: Principal

Date: 11/12/20

*Complete all lines of the Inmate Section.

*Incomplete or unreadable kites will be returned.

*Provide complete information needed to answer your question (names, dates, amounts, etc.).

*DO NOT send multiple kites to staff/departments with the same question/issue.

*Allow 10 days for a reply to the kite.

Crossroads Correctional Center
Education / Library
Supersedes: None
Effective Date 8/9/10

## INMATE REQUEST FOR LEGAL FORMS OR LEGAL RESEARCH

This Facility does not have an attorney to provide inmates with legal services. Use this form to request legal forms or to schedule computer time for your legal research. You may also request that the library staff assist you in computer operations so you can conduct your legal research. If you need any help filling out the forms, or doing research, contact the librarian.

(Please: print _clearly_ and be as specific as you can.)

**NAME:** _____ **AO#** _____

**HOUSING UNIT:** _____ **DATE OF JUDGMENT:** _____

**DATE:** _____

(Please indicate if you want _State_ or _Federal_ forms or information on all requests)

I Request the following form(s):

[ ] Supreme   [ ] District   [ ] Federal     - **In Forma Pauperis Applications**
[ ] Supreme   [ ] District   [ ] Federal     - **Package for Writs of Habeas Corpus**
[ ] State                                     - **Package for Post-Conviction Relief**
[ ] State                                     - **Notice of Appeal**
[ ] State                                     - **Motion to Withdraw Guilty Plea**
[ ] State                                     - **Petition for DNA testing**
[ ] State                                     - **Petition for Executive Clemency**
[ ] State                                     - **Application for Sentence Review**

           [ ] Federal     - **Federal Complaint**
           [ ] Federal     - **§1983 Complaint Package**

[ ] I request to be scheduled for computer time on **LexisNexis**

[ ] **OTHER.** (Please Specify) If you do not know what forms you need, please state what you want to do (i.e., challenge your sentence, request review of your sentence calculation, withdraw your guilty plea, etc.). The Library staff will send the appropriate forms available.

_____
_____
_____
_____

[ ] I request that the library staff assist me with library computer operation so I can research my legal material needs.

_____
_____
_____
_____

I agree that upon submission of this form that I will be charged $0.10 per page.

Exhibit 3.A

# Crossroads Correctional Center
## Effective June 10, 2020

Crossroads Correctional Center
Department: Education

# LIBRARY SCHEDULE

| TIME | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY |
|------|--------|---------|-----------|----------|--------|
| 7:00AM – 8:30AM | A-POD | B-POD | D-POD | E-POD | F-POD |
| 8:45AM – 10:10AM | E-POD | F-POD | A-POD | B-POD | D-POD |
| 10:45AM – 12:00PM | B-POD | D-POD | E-POD | F-POD | A-POD |
| 12:15PM – 1:00PM | USMS | USMS | USMS | USMS | USMS |
| 1:15PM – 2:10PM | S-DORM | S-DORM | S-DORM | S-DORM | S-DORM MAKE UP |
| 2:30PM – 3:15PM | C-POD | C-POD | C-POD | C-POD | C-POD MAKE UP |
| 3:30PM – 4:30PM | H-POD LAW | J-POD LAW | H-POD LAW | J-POD LAW | MAKE UP |

**Library Movement:** Library Call-Outs and Returns will only be during controlled moves. Call-Outs or Hall Passes will be issued as needed for appointments.

**Satellite Library Services:** Are offered 24 hours a day, 7 days a week. Library staff will make periodic checks on satellites in each Housing Unit to insure quality and availability to all inmate population.

**RHU Book Delivery:** Books requested by kite will be delivered to RHU once a week in addition to satellite library services once a month.

**Inter-Library Loan:** Service will be provided once a week.

**Law Library Service:** Law Library services consist of the Lexis-Nexis legal research software, typing services, and research time. Legal Call-Outs are available Monday through Friday. In order to schedule a time in the Law Library, inmates will need to make a request with the Library and sign up for a date and time.

Scheduling for Legal Library Call-Outs will be limited to one week in advance.

EXHIBIT - 5

 **CoreCivic**

Crossroads Correctional Center

50 Crossroads Drive

Shelby   MT   59474


**MEMORANDUM**

**TO:**       **Crossroads Inmate Population**

**FROM:**    **COUM Henson**

**DATE:**     **October 1, 2020**

**SUBJECT:**  **Lockdown/Quarantine**

Be advised during the lockdown/quarantine out of cell time is limited to 45 minutes. During this allotted 45 minutes you are allowed to clean your room, shower and utilize the telephone/ microwave. No sitting or exercising in the dayrooms or approaching other cells is allowed. Failure to comply may result in disciplinary action and reduction of out of cell time.





**DEPARTMENT OF CORRECTIONS**
**MONTANA STATE PRISON**
**OPERATIONAL PROCEDURE**

| Procedure: | MSP 3.3.2   INMATE ACCESS TO COURTS |
|---|---|
| Effective Date: | June 10, 2002                                        Page 1 of 3 and no Attachments |
| Revision Date(s): | July 1, 2007, July 13, 2009, March 7, 2017, September 6, 2019, October 1, 2019, September 1, 2020 |
| Reference(s): | DOC 3.3.2 |
| Signature: | /s/ Jim Salmonsen  /  Interim Warden |

## I.  PURPOSE

To provide assistance to inmates who desire to access the courts.

## II.  DEFINITIONS

Pro se – the inmate represents himself in court without an attorney.

## III.  PROCEDURES

### A.  Inmate Legal Access

1. The Warden or designee will ensure MSP inmates have meaningful access to the courts by providing:
   a. a minimum of one computer with electronic legal research capabilities in the high side library, the low side library, the Work Reentry Center Library, and one for use by inmates with disabilities;
   b. forms that inmates may utilize to file complaints or petitions;
   c. reasonable accommodations for legal access will be made for indigent inmates, inmates with disabilities, and inmates in restrictive housing units; and
   d. assistance to illiterate and non-English speaking inmates who wish to access legal material. Illiterate and non-English speaking inmates that need assistance will be referred to the Education Department for assistance.

### B.  Attorney Access to Inmates

1. Inmates who desire a consultation with their attorney will, upon reasonable notice by their attorney, be allowed to consult alone and in private with the attorney in accordance with procedures outlined in *MSP 3.3.8, Inmate Visiting*. The Warden may limit attorney visits if such visits present a threat to the safety, security, or orderly operation of MSP.

2. Inmates are allowed to correspond with attorneys and the courts in accordance with the provisions outlined in *MSP 3.3.6, Inmate Mail*.

### C.  Inmate Legal Materials and Assistance

1. Inmates will be provided access to MSP procedures and DOC policies and the following legal materials at the libraries:

---

   a. the Montana Code Annotated
   b. the published decisions of the Montana Supreme Court
   c. the decisions of the Montana federal district court
   d. the decisions of the Ninth Circuit Court of Appeals
   e. the decisions of the United States Supreme Court
   f. the United States Code, Titles 28 and 42
   g. federal and state rules of court
   h. the Administrative Rules of Montana, Title 20
   i. The non-restricted DOC Policies and applicable facility procedures

2. The following forms will be available for inmates in the libraries or from the librarian:
   a. Montana State District Court:
      1) Affidavit of Inability to Pay Filing Fees
      2) Motion to Withdraw a Plea of Guilty
      3) Petition for Post-Conviction Relief
      4) Petition for DNA Testing
      5) Petition for Writ of Habeas Corpus
      6) Motion
   b. Montana State Supreme Court:
      1) Motion to Proceed on Appeal Without Payment of Filing Fee
      2) Notice of Appeal
      3) Petition for Writ of Habeas Corpus
   c. United States District Court – District of Montana:
      1) Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus
      2) Complaint (Pro Se Prisoner)
      3) Motion to Proceed in Forma Pauperis
   d. Other:
      1) Application for Review of Sentence
      2) Application for Executive Clemency

### D.  Copies and Notary Services

1. A copy machine is available in the low side library for producing photocopies of legal research or court pleadings an inmate needs to pursue litigation.
   a. Inmates may purchase copy coupons from the librarians.  The coupons will be used by the inmates to exchange for:
      1) The photocopies of legal research or court pleadings that are made for them by the librarians or their designee.
      2) Each page of a policy or procedure that are printed out for them by the librarians or their designee.
   b. The cost of the coupons, which may include an administrative fee, may not exceed 25¢ per page.
   c. Inmates in restrictive housing units, and those with disabilities preventing them from accessing the library, may get photocopies or print outs of the materials referenced above by sending an OSR to the librarians, who will process their requests.
   d. Indigent inmates may request up to 30 pages of copies per month of the materials referenced above from the librarians.  The librarians will approve or reject the request based upon the inmate's name being on the current indigent list.

**B.**    Contractor must provide physical space, furniture, equipment and supervision for contact and non-contact visitation in accordance with applicable ACA Standards.

## SECTION XXIV

### Inmate Rights

**A.**    Contractor must provide the inmates the opportunity to voluntarily practice their own religious activities, subject only to those limitations necessary to maintain the order and security of the Facility. Inmates may not be required to attend or participate in religious services or discussions.

**B.**    Contractor must adopt and implement Department policy 3.3.3, Offender Grievance Procedures. Contractor must provide the Department with copies of all inmate grievances monthly, along with statistical information on number and type of grievances received as required by the Department.

**C.**    Contractor must adopt and implement Department and MSP Policy 3.4.1, Adult Institutional Discipline Policy. Disciplinary offenses and penalty codes must be posted in each inmate living area and other appropriate areas accessible by inmates. Contractor must provide the Department with copies of all documentation concerning Severe and Major disciplinary actions taken by the Contractor against inmates on a weekly basis. Contractor shall also provide statistical information on the number and types of discplinary reports and their dispositions on a monthly basis. The Department shall have final authority to approve, amend, or disapprove disciplinary actions by Contractor.

**D.**    Contractor may, in conjunction with disciplinary proceedings, make recommendations for the forfeiture of good time credits to the Department. A decision to forfeit good time credits is at the sole discretion of the Department.



**E.**    Contractor must provide *inmates* with assistance in accessing the courts. Contractor shall contract with an attorney to assist inmates in the drafting and filing of complaints, post-conviction petitions, sentence review applications, notice of appeal  and habeas corpus petitions. The contract shall substantially conform to the terms of the contract between the Department and its contract attorney, which is attached hereto as Appendix IV.

## SECTION XXV

### Inmate Telephones/Commissions

**A.**    The Contractor must contract with a public or private telephone company to provide coinless, collect telephone service to the inmate population. The telephone service contract must be submitted to the Department for its review and approval prior to acceptance by the Contractor. Rebates/commissions or other compensation received by Contractor from the telephone company must be directed to a separate Inmate Welfare fund account. Copies of source documentation supporting said rebates/commissions must be available for Department review.



The MDOC shall not pay the $9.14 use fee referenced in Section II, subsection (F)(2) of the Contract for Facility Development and shall not receive a credit toward construction costs for any MDOC inmate housed in the 52 bed dorm completed in 2004. However, the Contractor agrees to charge and collect from the originating jurisdiction this daily use fee for all other inmates housed in this dorm or at the facility and to credit said use fee toward facility construction costs as specified in the Facility Development contract.

The per diem rate set forth in this Amendment is contingent upon the continuation of the prevailing wage rates set forth in Appendix I of the Contract and effective January 1, 1998. If the prevailing wage rates set forth in Appendix I are increased by the Commission of Labor and Industry or otherwise, the parties agree to increase the per diem rate in accordance with the increased labor costs. The increase in per diem shall be concurrent with the increase in wage rates.

The MDOC will use 98% of all other MDOC beds at the CCC facility, with the exclusion of the 88 bed block used for the USMS, before placing inmates in the 52 bed dorm.

5.   Section VII, Responsibility for Habeas Corpus and Litigation Procedures, subsection C shall be revised to delete "Linda Cooper, Vice President, Legal Affairs" and replace it with "Gus Puryear, General Counsel."

6.   Section XVII, Food Services, subsection A shall be revised to read:

"The Contractor must provide three meals, including two hot meals for each inmate at regular meal times during each 24 hour period, with no more than 14 hours between the evening meal and breakfast. Variations may be allowed based on weekend and holiday food demands. Contractor shall follow Department policies related to food services, including 4.3.1, 4.3.2 and 4.3.3 or shall meet a higher standard."

7.   Section XVII, Food Services, subsection D shall be revised to delete "4.3.6" and replace it with "4.3.4."

8.   Section XIX, Academic, Vocational Services, shall be revised to amend subsection B to delete "*Wheels of Learning* approach to vocational education in the construction and building trades" and replace it with "Contren Learning Services through the NCCER (National Center of Construction Education and Research)."

9.   Section XX, Inmate Industry Programs, shall be revised to read:

"Contractor will work with the Department and Montana Correctional Enterprises (MCE) to identify an industries program for the Facility. Contractor will also provide inmate labor for MCE industries programs, as well as management and supervisory personnel. Contractor may not compete with or duplicate the Department's existing industry programs. All profits from the correctional industry programs will be retained by the Department and deposited in the MCE proprietary account to be used for expansion and improvement of the industry programs. At the conclusion of this Contract, all funds in the account will be retained by the Department."

10.  Section XXIV, Inmate Rights, subsection E shall be revised to read:

"CCA must provide inmates assistance in accessing the courts in a manner consistent with MSP practice and policy. Except as otherwise specified herein, CCA will utilize the services provided by the Department to fulfill the obligations of this provision. CCA will provide a monthly payment to the Department for attorney costs at a rate based on the monthly average cost CCA previously paid to the contract attorney from June 1,



through June 1, 2005. CCA will provide access to legal library materials through Lexus Nexus. All costs for the Lexus Nexus program, including updates and equipment, will be borne by the IWF."

11.  Section XXVI, Inmate Commissary/Canteen, shall be revised to read:

"The Contractor must make canteen items available to inmates. Canteen items must be comparable to the Department's canteen items. Prices charged for items should be comparable to those charged in Department facilities. The Contactor must provide suitable space, utilities and equipment to provide canteen items. Separate financial records and accounts must be maintained by the Contractor for all canteen business. The Facility commissary/canteen system must interface with the facilities' inmate banking system. Contractor is responsible for all programming costs, including security costs, and all communications links. All profits from the canteen operation, with a minimum of 1% of gross sales, must be deposited in a separate account and utilized for inmate rehabilitative needs, in conformity with the Montana State Prison Inmate Welfare Fund. The Department shall have final authority to approve or disapproved use of the funds in this account. Quarterly financial statements – balance sheet, income statement – of the inmate canteen operation including Contractor and subcontractor, if applicable, must be submitted to the Department with a detailed listing of all expenditures for inmate benefits. A quarterly itemized statement of all receipts and disbursements of the Contractor's inmate canteen account must be available to the Department's Contractor Monitor no later than the 15th day of the following month. Employment practices and operating procedures, etc., must be consistent with those employed at similar Department operated prisons. The Contractor must be responsible for providing necessary administration services to the canteen operation. Canteen operations must be audited annually by a Certified Public Accounting firm. The expense of the annual audit of the canteen must be borne by the canteen. Contractor may use commissary funds to pay for commissary worker salaries, inventory and other commissary expenses."



12.  Section XXXX, Compliance with Applicable Laws shall be renamed **Compliance with Applicable Laws and Standards** and shall be revised to read:

"The Contractor will provide services incompliance with all Federal and State of Montana laws, Administrative Rules of Montana, applicable Department policies, and MDOC Compliance Standards and ACA/NCCHC Standards (pertaining to inmate services and programs) as they may subsequently be amended and adopted.

Except as noted herein, the parties agree that a negotiation of prisoner per diem rate increases will not be allowed unless the Contractor has achieved and maintained an overall compliance rating of not less than 90% on each compliance monitoring review/audit conducted by the MDOC Quality Assurance Bureau. The review/audits will take place on a biennial schedule for Regional Prisons and annually for Private Prisons.

In the event that the Contractor does not achieve and maintain an overall compliance rating of not less than 90% on a compliance monitoring review/audit, the Contractor will be given an opportunity and period of time to address the areas(s) of concern via a Department-provided action plan. Negotiations of per diem rate increases will only be allowed after the Contractor has successfully achieved the overall compliance rating defined herein. Action plans will be reviewed quarterly at a meeting between the Contractor and MDOC."

13.  Section XXXXVI, Contractor Compliance Assessment, subsection C, shall be revised to read:

"The Department's Contract Monitor will prepare a Notice of Non-Compliance which will identify each instance of non-compliance with this Contract. The Department will grant the Contractor a reasonable time, typically 60 days, to rectify the noncompliance. Notwithstanding the foregoing, in the event that the



**DEPARTMENT OF CORRECTIONS**
**MONTANA STATE PRISON**
**OPERATIONAL PROCEDURE**

| Procedure: | 3.3.3 INMATE GRIEVANCE PROGRAM | |
|---|---|---|
| Effective Date: | November 11, 1996 | Page 1 of 12 and 7 Attachments |
| Revision Date(s): | April 1, 1997; September 30, 2003; April 1, 2005; July 1, 2007; May 13, 2009; February 27, 2013; March 10, 2014; April 29, 2016; December 8, 2016, November 1, 2019 | |
| Reference(s): | DOC 3.3.3 | |
| Signature: | /s/ Lynn Guyer / Warden | |
| Signature: | /s/ Gayle Butler / MCE Administrator | |

## I. PURPOSE

To provide an internal grievance mechanism to resolve inmate complaints, reduce the need for litigation, and afford staff the opportunity to improve facility operations.

## II. DEFINITIONS

<u>Authorized Staff Member</u>- Administrators, Grievance staff, Unit Managers, Case Manager or Unit Sergeants and their designees.

<u>Clinical Services Grievance</u> – A grievance concerning matters of health services care and judgment. Includes matters of medical, vision, dental, mental health, chemical dependency and sex offender treatment care.

<u>Disability</u> – A physical or mental impairment that substantially limits one or more of a person's major life activities, a person who has a history of such an impairment, or a person who is perceived by others as having such an impairment. See *Americans with Disabilities Act of 1990 42 USC 12010*, as amended.

<u>Emergency Grievance</u> – A grievance concerning matters that subject (or has subjected) an inmate to a substantial risk of immediate personal injury or serious harm; this includes serious mental health issues. This is to include PREA related matters.

<u>Facility Health Administrator (FHA)</u> - The staff member assigned to administer the facility's health services.

<u>Grievance</u> – An individual complaint filed by an inmate concerning subject matter as outlined in this operational procedure.

<u>Grievance Coordinator (GC)</u> – The staff member assigned to administer, investigate, and respond to inmate grievances. The responsibilities of this position may also apply to that person's designee.

<u>Informal Resolution</u>- An individual complaint filed by an inmate as the first step outlined in this operational procedure.

<u>Not Processed Grievance</u> – A grievance that is returned to the inmate with explanation of the violation of procedure.

| Procedure No. MSP 3.3.3 | Subject: INMATE GRIEVANCE PROGRAM | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 2 of 12 |

<u>Policy / Operational Procedure Grievance</u> – A grievance concerning changes to written policies and procedures.

<u>Staff Conduct Grievance</u> – A grievance concerning prohibited conduct as defined in *DOC 1.3.12.*

<u>Standard Grievance</u> – A grievance concerning all other matters not specifically categorized below.

III. **PROCEDURES**

    **A. Non-Grievable Issues**

        1. Actions by outside entities not under the jurisdiction of the Department of Corrections (Department), including the Sentence Review Board and Board of Pardons and Parole, are not grievable under the inmate grievance program.

        2. Classification, disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process, are not grievable under the inmate grievance program.

    **B. Grievable Issues**

        1. All other issues including, but not limited to, health care, staff conduct, written policy or procedures, and other standard grievance matters such as property, food service, conditions of confinement, program access (such as access to vocational education, treatment or employment), religious issues, or provision or denial of an accommodation to a prisoner with a disability are grievable. All grievances should show in some manner how the inmate has been personally adversely affected.

        2. Grievances regarding the Department and the particular facility's written policies and operational procedures must specifically demonstrate with factual basis that the inmate filing the grievance has been, in some manner, unfairly or personally adversely affected by the application or operation of a written policy or operational procedure.

    **C. Distribution, Submission, and Collection of Forms**

        1. All formal grievances and appeals will be processed through the Grievance Coordinator (GC), or designee. The GC will distribute Inmate Informal Resolution forms, Inmate Grievance forms and Grievance Continuation forms to each housing unit, where they will be freely available to inmates from housing unit staff.

        2. After filing an informal resolution (see section E), the inmate may submit a written statement of his issue by filling out an *Inmate/Offender Grievance Form* (attachment C) and placing it in the locked collection box located in the housing unit lobby. The GC, or designee, will collect grievance forms weekly from locked collection boxes and directly from locked housing unit inmates no less than once per 40-hour week.

    **D. Time Limits, Extension, and Exhaustion**

        1. The maximum length of time for completion of the grievance process is 180 calendar days, from initiation to final disposition. The *Inmate Grievance Flowchart* (attachment G) summarizes the process and clearly identifies the applicable time frames.

| Procedure No. MSP 3.3.3 | Subject: **INMATE GRIEVANCE PROGRAM** | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 3 of 12 |

2. With respect to all time limits established in this operational procedure for inmates, extensions may be granted by the GC for good cause shown in exceptional circumstances such as physical incapacity or being in transit while separated from relevant documents.

3. Staff may only exceed the time limits set in this operational procedure for good cause and with written notice to the inmate on a *Grievance Response Extension Form* (attachment A).

4. If an inmate fails to receive a timely response from a staff member as set forth in this operational procedure, the inmate may file the appropriate forms to advance to the next level of the grievance program.

5. If an inmate fails to advance to the next level of the grievance program within the stated time limit, he will be considered to have forfeited the opportunity to exhaust his administrative remedies under the inmate grievance program.

6. If an inmate's action requested is granted, he will not be allowed to appeal the decision, and it is understood he has exhausted all administrative remedies.

7. An inmate who had exhausted the administrative remedies available under this procedure with respect to a specific issue or event, may not grieve the same specific issue or event again.

E. **Accommodations for Inmates with Disabilities During the Grievance Process**

1. If an inmate is unable to complete any form mentioned herein, as a result of a physical or mental disability, staff shall assist the inmate in completing the form. The inmate will be required to report the grievance or, if appropriate, intent to appeal the grievance to unit staff and request assistance. Once unit staff have communicated with the individual, staff shall assist the inmate in completing the requisite form. If the staff member contacted is unable to sufficiently communicate with the individual, staff shall request the assistance of appropriate staff or other persons with requisite training, such as the offender ADA Coordinator. All information shared between the individual inmate and staff shall be confidential from other inmates and unnecessary staff and shall not be disclosed other than to enable the inmate to file or otherwise pursue the grievance or ensure that an appropriate accommodation is provided in the grievance process. If assistance is provided, an appropriate notation shall be made in OMIS.

2. If the inmate, as a result of physical or mental disability, would be unable to sufficiently understand a written response provided to a grievance or an appeal of a grievance, the offender ADA coordinator and/or designee shall meet with the inmate to discuss: the decision; if applicable, the process for appealing the decision; and the timeframe within which the appeal must be filed. This accommodation shall be documented in the inmate's institutional record and in OMIS. All information shared between the individual inmate and staff shall be confidential from other inmates and unnecessary staff and shall not be disclosed other than to enable the inmate to file or otherwise pursue the grievance or to ensure that an appropriate accommodation is provided in the grievance process.

3. If assistance is provided or any other requirement is waived, an appropriate notation shall be made in OMIS.

F. **Informal Resolution**

| Procedure No.  MSP 3.3.3 | Subject:  **INMATE GRIEVANCE PROGRAM** | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 4 of 12 |

1. Except as provided below regarding emergency grievances, an inmate must first present an issue of concern on an *Inmate/Offender Informal Resolution Form* (attachment B) to his assigned Unit Manager (UM) or designee within five working days of the action or omission that caused the complaint, in an attempt to resolve the issue before filing a formal grievance. This includes the following:

   a.  if the inmate submits an issue of concern on a form other than those provided by the grievance office, they risk having it returned without processing;

   b.  the inmate will complete an Inmate/offender Informal Resolution Form (attachment B) with all requested identifying information, and legibly and clearly state the issue in the space provided on the form. If more space is needed, the inmate may use up to one Inmate/Offender Grievance Continuation Form (attachment D);

   c.  the inmate will describe a single issue or a reasonable number of closely related issues on the form.  If the inmate includes multiple unrelated issues on a single form, the Unit manager or designee will reject and return document as not processed  and advise the inmate to use a separate form for each unrelated issue. The inmate will have 48 hours from receipt to make the necessary changes. If the resubmission is late the UM will reject and return the informal resolution as not processed;

   d.  if two or more inmates file issues on the same informal resolution form, the Unit Manager will return it to the inmate(s) unprocessed; and

   e.  if the inmate has previously grieved the issue to the UM, the UM will return the informal resolution as not processed with a written explanation.

2. The UM, or designee, will investigate and attempt to resolve the issue informally, and provide a written or typed response which will contain specific, explanatory reasons for any decision to assist the inmate's understanding of the decision; the response will be provided to the inmate on the *Inmate/Offender Informal Resolution Form* within 20 working days of receipt of the form. The written or typed response will be hand delivered to the inmate by an authorized staff member for signature.

3. The UM or designee, must attach all documentation that was used to support disposition of the informal resolution for the grievance file

4. Except for the Department Director, any person implicated in an informal resolution will not participate in the decision-making process concerning the grievance

5. If the UM, or designee, refers the issue to a more appropriate department for response, the action and date of referral must be documented.  The receiving staff member will thoroughly address the issue and notify the inmate and UM if an answer cannot be provided before the established 20-day deadline.  The response to the informal resolution will be routed back to the UM to be delivered to the inmate by an authorized staff member for signature.

6. An inmate wishing to file a formal grievance must do so within five working days from the date he received the informal resolution response.  If the inmate doesn't receive a response to his informal resolution within 25 working days, he may proceed by filing a formal grievance without informal response.  He must file the formal grievance within the next five working days.

## G.  Formal Grievance – Filing

| Procedure No. MSP 3.3.3 | Subject: **INMATE GRIEVANCE PROGRAM** | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 5 of 12 |

1. The inmate will only use the forms provided by the grievance office to file a grievance. If an inmate submits a grievance on a form other than those provided by the grievance office, the GC will reject it.

2. The inmate will complete an *Inmate/Offender Grievance Form* (attachment C) with all requested identifying information, and legibly and clearly state the issue in the space provided on the form. If more space is needed, the inmate may use up to one *Inmate/Offender Grievance Continuation Form* (attachment D).

3. The inmate will state the name of every individual against whom the inmate is making the claim.

4. The inmate will describe a single issue or a reasonable number of closely related issues on the form. If the inmate includes multiple unrelated issues on a single form, the GC will reject and return the document as not processed and advise the inmate to use a separate form for each unrelated issue. The inmate will have 48 hours from receipt to make the necessary changes. If the resubmission is late the GC will reject grievance and return as not processed.

5. The inmate will provide copies of all documentation essential to the resolution of a grievance, including the Inmate/Offender Informal Resolution Form with staff response. If the inmate does not provide a copy of the Inmate/Offender Informal Resolution form, they risk having the grievance returned by the GC without processing. Therefore, inmates are encouraged to retain a copy of all exhibits for their personal records. Upon response of the grievance the original copies will be returned to the Inmate, the GC will maintain all copies of the supporting documents.

6. If two or more inmates file a grievance on the same form, the GC will return it to the inmate(s) unprocessed.

7. Inmates may obtain assistance from staff or other inmates to file a grievance form, but an inmate may not submit a grievance form on behalf of another inmate. If an inmate submits a grievance on behalf of another inmate, the GC will return it to the inmate unprocessed.

8. If the grievance or requested remedy is unclear, the GC or other staff shall meet with the offender for clarification. Staff may also consult with the offender ADA Coordinator and if they do so, that consultation shall be documented in OMIS.

9. The GC will assure that the grievance form is complete, and will return an incomplete grievance form to the inmate with a written statement as to why it is not being processed. The inmate may resubmit the grievance form with the appropriate corrections, but must do so within 48 hours. If the resubmitted grievance is submitted late the GC will reject it.

10. If an inmate raises any issue that was not raised in the previous level of filing during the steps of grieving an issue, or changes the action requested, the GC will return the form to the inmate with a written statement as to why it is not being processed any further.

11. If an inmate combines grievances of separate previous level responses into a single grievance, the GC will return the form to the inmate with a written statement as to why it is not being processed any further.

## H.  Responding to the Formal Grievance

1. The GC, or designee, will respond to all properly filed grievance forms within 20 working days. All responses will be either written or typed, and will contain specific, explanatory reasons for

| Procedure No.  MSP 3.3.3 | Subject:  **INMATE GRIEVANCE PROGRAM** | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 6 of 12 |

any decision to assist the inmate's understanding of the decision. Additionally, staff must clearly mark whether the action is granted, denied or granted in part on the form.

2. The staff member providing the written or typed response will legibly sign and date it. The written or typed response will be hand delivered to the inmate by an authorized staff member for signature.

3. Except for the Department Director, any person implicated in a formal inmate grievance will not participate in the decision-making process concerning the grievance.

4. Staff members will include instructions either verbally or in writing to the inmate on how to advance his grievance issue to the next level, or for proper completion of the appeal form

5. An inmate wishing to file an appeal must do so within five working days from the date he received the formal level response. If the inmate doesn't receive a response to his formal grievance within 25 working days, he may proceed by filing a Warden Appeal without formal response. Appeals are not located in the housing units therefore the Inmate must submit an OSR to the GC to obtain the appeal. He must file the appeal within the next 5 days of receipt of the form.

**I.  Processing by Grievance Coordinator (GC)**

1. The GC will act as follows:
   a. determine into which category the issue falls and log the grievance upon receipt; **(Note: Emergency issues will be screened for actual emergent nature). The GC or Shift Commander will immediately forward actual emergent nature, operational procedure, and staff conduct grievances to the Warden / Facility Administrator, or designee. The GC or shift Commander will confer with the facility health administrator (FHA), or designee, to determine whether a grievance filed as a health services issue should be deemed standard or health services related. The FHA, or designee, will process those deemed health services issues.)**
   b. immediately return any incomplete or improperly filed grievance form to the inmate;
   c. respond to a standard grievance within 20 working days of receipt;
   d. document the basis of any decision in the response to the inmate;
   e. retain all documentation regarding the grievance in the grievance files, including all efforts to resolve the grievance;
   f. record all steps of the grievance and any appeals in a grievance log;
   g. deliver all responses to the inmates;
   h. forward all appeals to the appropriate person; and
   i. any ADA related grievance will be forwarded to the ADA coordinator. The ADA coordinator will coordinate with appropriate staff including medical to resolve the grievance and provide a response. If the GC receives an ADA related grievance that is unclear or does not otherwise conform to procedure, the GC or ADA coordinator will meet with the inmate, as stated in this procedure (III, G, 8). This will ensure an ADA grievance will not be returned unprocessed.

**J.  Processing by the Warden / Facility Administrator**

1. The appeals process is as follows:
   a. an inmate wishing to appeal the GC's response may do so by submitting an *Inmate/Offender Grievance Appeal to Warden/Administrator form* (attachment E) and any additional

| Procedure No.  MSP 3.3.3 | Subject:  **INMATE GRIEVANCE PROGRAM** | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 7 of 12 |

documentation to the GC within five working days of receipt of the response to the grievance. If more space is needed, the inmate may use up to one *Inmate/Offender Grievance Continuation Form* (attachment D). The GC will ensure the appeal form has been properly filed, attach all documentation, and promptly forward the appeal to the Warden / Facility Administrator or designee.  The GC will return any improperly filed appeal to the inmate with a written statement as to why it is not being processed any further;

    b.  within 20 working days of receipt of the appeal form, the Warden / Facility Administrator or designee will review the grievance and provide a written response to the inmate, specifying the reasons for any decision.  The Warden / Facility Administrator or designee will include instructions to the inmate that he may appeal the decision to the Department Director; and

    c.  the response will be returned to the inmate through the GC, who will notify the inmate that he has five working days from receipt to submit an appeal to the decision to the GC who will forward it to the Department Director.

2.  Emergency Grievances consist of the following:

    a.  the Warden / Facility Administrator or designee will respond to an emergency grievance within 48 hours of receipt of the grievance.  The response will include instructions to the inmate that he may appeal the decision to the Department Director; and

    b.  the response will be returned to the inmate through the GC, who will notify the inmate that he has three workings days from receipt to submit an appeal to the decision to the GC who will forward the appeal to the Department Director.

3.  The Staff Conduct Grievances process consists of the following:

    a.  The GC will immediately forward any grievance that fits the specific criteria noted in *DOC Policy 1.3.12, Staff Association and Conduct with Offenders* to the Warden / Facility Administrator or designee;

    b.  The Warden / Facility Administrator or designee will provide a written response to the inmate within 20 working days of receipt of the grievance.  The response will include instructions to the inmate that he may appeal the decision to the Department Director if the action requested is denied or granted in part; and

    c.  The response will be returned to the inmate through the GC, who will inform the inmate that he has five working days to submit an appeal to the decision to the GC who will forward the appeal to the Department Director.

4.  Policy and Operational Procedure Grievances are as follows:

    a.  the GC will forward any grievance concerning changes to formal policy or operational procedures to the Warden / Facility Administrator or designee;

    b.  the Warden / Facility Administrator or designee will convene an operational procedure / policy committee as deemed necessary, and will provide a written response to the inmate within 20 working days of receipt of the grievance.  The response will include instructions to the inmate that he may appeal the decision to the Department Director; and

    c.  the response will be returned to the inmate through the GC, who will inform the inmate that he has five working days to submit an appeal to the decision to the to the GC who will forward the appeal to the Department Director.

**K.  Health Services Grievances**

1.  The GC and FHA, or designee, will determine whether a grievance alleging problems related to health services will be handled as a standard or a health services grievance. This includes the following:

| Procedure No. MSP 3.3.3 | Subject: **INMATE GRIEVANCE PROGRAM** | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 8 of 12 |

     a. if it involves health services judgment, the FHA or designee will take the grievance and process it; and

     b. if the grievance doesn't involve health services judgment, the GC will take the grievance and process it as a standard grievance.

2. The FHA or designee will confer as necessary with the health care provider, and must notify the Department Medical Director or designee (or the Department Dental Director if it involves dental judgment), prior to responding to the grievance.

3. The FHA or designee will provide a written response within 20 working days of receipt of the grievance, including instructions to the inmate that he may appeal the decision to the Department Medical Director or designee (or the Department Dental Director if it involves dental judgment). The FHA or designee will return the response to the GC.

4. The GC will deliver the FHA's response to the inmate and inform him that he has five working days to submit an *Inmate/Offender Grievance Appeal to Warden/Administrator* form (attachment E) to the GC.

5. Upon receipt of the appeal the GC will copy the Warden / Facility Administrator and forward the appeal form to the Department Medical Director or designee (or the Department Dental Director if it involves dental judgment).

6. The Department Medical Director or designee (or the Department Dental Director if it involves dental judgment) will provide a written response within 20 working days of receipt of the appeal, including instructions to the inmate that he may appeal the decision to the Department Director or designee. The Department Medical Director or designee (or the Department Dental Director if it involves dental judgment) will return the response to the GC.

7. The GC will deliver the Department Medical Director's (or the Department Dental Director if it involves dental judgment) response to the inmate and inform him that he has five working days to submit an *Inmate/Offender Grievance Appeal to Corrections Director* form (attachment F) to the GC.

8. Upon receipt of the appeal, the GC will forward the appeal to the Department Director or designee

**L. Processing by the Department Director**

1. An inmate wishing to appeal a Warden / Facility Administrator or Department Medical Director or designee (or the Department Dental Director if it involves dental judgment) response must submit an *Inmate/Offender Grievance Appeal to Corrections Director* form (attachment F) and any additional documentation to the GC within five working days of receipt of the response. If more space is needed, the inmate may use up to one *Inmate/Offender Grievance Continuation Form* (attachment D).

     a. The GC will ensure the appeal form has been properly filed. The GC will return any improperly filed appeal to the inmate with a written statement as to why it is not being processed any further.

     b. If the appeal has been properly filed, the GC will attach all documentation, and promptly forward the appeal to:

        1) the Department Director for review, and

| Procedure No. MSP 3.3.3 | Subject: **INMATE GRIEVANCE PROGRAM** | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 9 of 12 |

2) the relevant Warden, Facility Administrator, Department Medical Director, or Department Dental Director, or designee, so they will be aware of the pending appeal to the Director.

2. An inmate may not raise in an appeal any issue that was not raised in the lower level filings. An inmate may not combine appeals of separate lower level responses into a single appeal.

3. The Department Director or designee will respond to an emergency grievance within 10 working days of receipt of the grievance and appeal. The Department Director or designee will respond to all other appeals within 20 working days of receipt of the grievance and appeal. The Department Director or designee will review the grievance and provide a written response to the inmate, specifying the reasons for any decision. The response will be returned to the inmate through the GC.

4. The Department Director's response is final, and exhausts all administrative remedies available to the inmate through the inmate grievance program.

**M. Emergency Grievances**

1. Inmates alleging actual, or risk of, immediate physical harm may file a formal emergency grievance.

2. The inmate will specify on an *Inmate/Offender Grievance Form* the exact nature of the issue and why the issue is considered an emergency. The inmate has 48 hours from the incident to file a formal emergency grievance except issues that are not time barred from filing, such as a PREA or ADA claim.

3. The inmate will submit the completed *Inmate/Offender Grievance Form* to the GC; or to the Shift Commander in the GC's absence. Any inmate alleging an emergency grievance issue may obtain assistance from any staff member to ensure the grievance is delivered to the GC or Shift Commander. The GC or Shift Commander will determine whether the issue is a legitimate emergency, and will forward legitimate emergency grievances to the Warden / Facility Administrator or designee for processing.

4. The Warden / Facility Administrator or designee will respond to the inmate in writing within 48 hours of receipt of the emergency grievance. The GC may extend this time frame, but only for an additional 48 hours. The GC will inform the inmate in writing of any time frame extension.

5. The inmate may appeal the Warden / Facility Administrator's response to the emergency grievance to the Department Director by submitting a completed appeal form to the GC within five working days of receipt of the response. The GC will promptly forward the appeal to the Department Director. The Department Director will respond to all legitimate emergency grievances in writing within 10 working days of receipt.

6. If the issue is determined not to be a legitimate emergency by the GC, Shift Commander, Warden / Facility Administrator, or designee, the GC will return the grievance to the inmate within 48 hours, with a written response specifying why the issue is inappropriate as an emergency. The inmate then has five working days to pursue the issue as a standard grievance, beginning with submission of an informal resolution form.

7. The inmate may not appeal the decision to return the grievance to him to pursue as a standard grievance issue.

| Procedure No. MSP 3.3.3 | Subject: INMATE GRIEVANCE PROGRAM | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 10 of 12 |

**N. Inmate Use of the Grievance Program – Protection Against Reprisal and Confidentiality**

1. Staff will not harass, punish, or discipline an inmate for utilizing the inmate grievance process. Employees will be subject to disciplinary action if they violate this directive.

2. Complaints and all level of grievances will not be discussed or shared with staff or offenders not actively involved in the resolution of the grievance unless there are safety/security concerns.

3. Prior to disclosure of any grievance to the public, the inmate will be notified of the disclosure and given an opportunity to consent or object to the disclosure. If the inmate objects to disclosure, the Department will balance the inmate's right to privacy against the public's right to know in determining whether the grievance should be disclosed.

4. Inmates will not be given investigative reports/note sheet and written testimony from staff or other inmates. Such documents often contain sensitive information and therefore will be considered confidential.

5. Unless required by law or policy, Department findings in any employment investigation or action related to a grievance will not be released to the inmate as they are confidential.

6. All grievance documents will be placed only in the grievance files maintained by the GC. They will not be copied to other files.

**O. Inmate Abuse of the Grievance Program**

1. Abuse of the grievance procedure by an inmate may include, but is not limited to, submitting an excessive number of grievance forms; or, submitting multiple grievances in reference to the same issue(s).

2. If an inmate demonstrates a pattern of abuse of the inmate grievance program, the Warden/Facility Administrator or designee will notify the inmate, in writing, that such actions are creating an administrative burden at the expense of legitimate complaints. The abuse notice will contain specific reasons for the decision and notify the inmate that the GC will return future grievances that demonstrate a continued pattern of abuse. Abuse notices are not be subject to appeal.

3. The GC will log, assign a case number, and return any future grievances demonstrating a continued pattern of abuse to the inmate with the issue unanswered. The GC will explain the action in the log, on the grievance, and to the Unit Manager or designee.

4. If an inmate submits a grievance that is in violation of his abuse notice, the GC will not process it and notify the inmate his right to resubmit is forfeited.

5. If an inmate is transferred to a contract facility, that facility's Warden/Facility Administrator or designee has the authority to continue or discontinue the abuse notice. The Warden/Facility Administrator or designee will provide the decision in writing to the inmate.

**P. Access to Information**

| Procedure No.  MSP 3.3.3 | Subject:  **INMATE GRIEVANCE PROGRAM** | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 11 of 12 |

1. All inmates will have access to a copy of this operational procedure, regardless of their classification, disciplinary, or administrative status.  Copies will be maintained in the inmate libraries.

2. The GC or designee will ensure newly received inmates and newly hired staff are given an opportunity to review this operational procedure and ask questions and receive answers about its procedures.

3. In the course of resolving a formal inmate grievance complaint, the GC, or designee, will have access to essential records for grievance resolution.  The inmate's grievance serves as a waiver of confidentiality in this regard.

4. This operational procedure will be available in English and any other language spoken by 10% of the inmate population.  The assigned UM or designee will assist inmates who do not speak a language spoken by a significant portion of the inmate population, as well as those inmates who are visually or otherwise impaired.  The UM or designee will explain how to complete forms, file, appeal, and resolve grievances.

## Q. Remedies and Actions Requested

1. The grievance procedure will afford a grievant a meaningful remedy to valid grievances.  The scope of available administrative remedies is broad and should be applied on a case-by-case basis.  Possible remedies include, but are not limited to:
   a.  modification of institutional operational procedure or practice;
   b.  replacement, restoration of, or restitution for personal property; and
   c.  other remedies that will meaningfully solve the problem presented.

2. If the action requested violates any of the following criteria the GC will return the grievance without processing. This includes:
   a. monies requested:
      1)  must not be of punitive nature; and
      2)  cannot exceed the actual financial damages incurred.  (substantiated inmate claims of property loss or damage by staff may be reimbursed by the GC or staff with authority to spend from the assigned budget).
   b. An investigation request is the only acceptable action in regard to all staff conduct issues. Requests for termination, reprimand, and apology letters will not be accepted.

3. If the action requested on a formal grievance or appeal is not the same as that requested on the previously filed informal resolution form, the GC will return the grievance or appeal to the inmate without processing.

## R. Grievances Alleging Sexual Abuse

1. Offenders alleging sexual abuse must not be required to use an informal grievance system nor must they be required to resolve such a grievance with staff or submit the grievance to the staff member who is the subject of the complaint and the grievance will not be referred to the staff member who is the subject of the complaint.

2. There will be no time limit placed on the filing of a grievance alleging sexual abuse.  Applicable time limits may be applied to any portion of a grievance that does not allege an incident of sexual abuse.

| Procedure No. MSP 3.3.3 | Subject: **INMATE GRIEVANCE PROGRAM** | |
|---|---|---|
| Effective Date: November 1, 2019 | | Page 12 of 12 |

3. A final decision on the merits of any portion of a grievance alleging sexual abuse must be issues within 90 days of the initial filing of the grievance. This does not include time consumed by the offender in preparing any appeals.

4. If the 90-day time period for response is insufficient to make an appropriate decision an extension of up to 70 days may be allowed to respond. The offender must be notified in writing of any such extension and provided a date by which a decision will be made.

5. At any level of the process, including the final level, if the offender does not receive a response within the time allotted for reply, including any properly noticed extension, the offender may consider the absence of a response to be a denial at that level.

6. Procedures for the filing of an emergency grievance alleging that an offender is subject to a substantial risk of imminent sexual abuse must include:
   a. the grievance, or any portion thereof that alleges the substantial risk of imminent sexual abuse, will immediately be forwarded to a level of review at which immediate corrective action may be taken;
   b. an initial response will be provided within 48 hours;
   c. a final decision will be made within five calendar days; and
   d. the initial response and final decision will document the determination whether the offender is in substantial risk of imminent sexual abuse and the action taken in response to the emergency grievance.

7. Third parties are permitted to assist offenders in filing requests for administrative remedies relating to allegations of sexual abuse, and are permitted to file such requests on behalf of an offender, with the following exceptions:
   a. adult offenders must give permission for the third party to file requests and must personally pursue any subsequent steps in the grievance process;
   b. if the alleged victim is a juvenile a parent or legal guardian is allowed to file a grievance, including appeals, on behalf of the juvenile without the agreement of the juvenile;
   c. if the alleged victim is a juvenile and the third party is not a parent or legal guardian, the facility may require the juvenile to agree to have the request filed on his or her behalf and may require the juvenile to personally pursue any subsequent steps in the grievance process;
   d. if the offender declines to have the request processed on his or her behalf the facility will document the offender's decision.

IV.    **CLOSING**
Questions concerning this operational procedure should be directed to the Technical Correctional Services Program Manager.

V.    **ATTACHMENTS**

| | |
|---|---|
| Grievance Response Extension Form | Attachment A |
| Inmate/Offender Informal Resolution Form | Attachment B |
| Inmate/Offender Grievance Form | Attachment C |
| Inmate/Offender Grievance Continuation Form | Attachment D |
| Inmate/Offender Grievance Appeal To Warden/Administrator | Attachment E |
| Inmate/Offender Grievance Appeal To Corrections Director | Attachment F |
| Inmate Grievance Flowchart | Attachment G |

## INMATE GRIEVANCE FLOWCHART

| INFORMAL RESOLUTION | STANDARD | EMERGENCY |
|---|---|---|
| *GRIEVABLE INCIDENT OCCURS* | **GC**<br>Log, investigate & respond:<br>• **20 working days**<br>• Grant/deny<br><br>*GC gives response to inmate.* | * **Bypasses Informal Resolution due to its nature.** |
| **Inmate**<br>Attempts to resolve.<br>• **5 working days**<br>• Attempt to resolve with staff involved.<br>• May take issue to UM/CM for assistance & to file Informal Resolution form. | | **Inmate (48 hrs.)** gives grievance to either:<br>• Grievance Coordinator<br>• Unit Supervisor, or;<br>• Shift Commander<br>*Unit Supervisor forwards to either:*<br>➢ Grievance Coordinator or<br>➢ Shift Commander<br>*Shift Commander or Grievance Coordinator determines if grievance meets emergency criteria (ASAP) and forwards to Warden / Facility Administrator.* |
| **UM / CM / Involved Staff**<br>Respond to informal resolution request.<br>• **20 working days**<br>• Grant/deny/grant in part/find alternative resolution.<br>• Deliver response to inmate. | **If inmate appeals**<br>• **5 working days**<br>• File *Appeal-to-Warden / Administrator* with GC.<br><br>*GC attaches all documentation & forwards to Warden / Facility Administrator.* | |
| **If inmate is satisfied, issue is considered resolved & no further action is taken.**<br><br>*Informal resolution paperwork forwarded to GC for recording.* | **Warden / Facility Administrator**<br>• **20 working days**<br>• Grant/deny/grant in part/return to GC for further review.<br><br>*GC gives response to inmate.* | **Warden / Facility Administrator**<br>• **48 hours**<br>• + 48 hours (with written notice)<br>  1. Grant<br>  2. Deny<br>  3. Return as not emergent<br><br>*GC gives response to inmate.* |
| **If inmate is *not* satisfied**<br>• **5 working days**<br>• Submit formal grievance to GC. | **If inmate appeals**<br>• **5 working days**<br>• Inmate files appeal to Department Director with GC.<br><br>*GC attaches all documentation and forwards to Department Director.* | **If inmate appeals**<br>• **3 working days**<br>• Inmate files appeal to Department Director with GC.<br><br>*GC attaches all documentation and forwards to Department Director.* |
| | **Department Director**<br>• **20 working days**<br>• Grant/deny/grant in part/return to GC or Warden / Facility Administrator for further review.<br><br>*GC gives response to inmate.* | **Department Director**<br>• **10 working days**<br>• Grant/deny/grant in part/return to GC or Warden / Facility Administrator for further review.<br><br>*GC gives response to inmate.* |
| | **This exhausts the available DOC administrative remedies** | **This exhausts the available DOC administrative remedies** |

## INMATE GRIEVANCE FLOWCHART

| CLINICAL SERVICES | POLICY / PROCEDURE | STAFF CONDUCT |
|---|---|---|
| **GC**<br>Log & forward to Facility Health Administrator (FHA) or designee.<br>**ASAP** | **GC**<br>Log & forward to Warden / Facility Administrator.<br>**ASAP** | **GC**<br>Log & forward to Warden / Facility Administrator.<br>**ASAP** |
| **FHA**<br>Confers with provider, notifies DOC Medical/Dental Director, & responds:<br>• **20 working days**<br>• **Grant/deny/grant in part**<br><br>*GC gives response to inmate.* | **Warden / Facility Administrator**<br>• **20 working days**<br>• **Grant/deny/grant in part/return to GC for further review.**<br><br>*GC gives response to inmate.* | **Warden / Facility Administrator**<br>• **20 working days**<br>• **Grant/deny/grant in part.**<br><br>*GC gives response to inmate.* |
| **If inmate appeals**<br>• **5 working days**<br>• **Inmate files appeal to DOC Medical/Dental Director with GC.**<br><br>*GC attaches all documentation, copies Warden / Facility Administrator, and forwards to DOC Medical/Dental Director.* | **If inmate appeals**<br>• **5 working days**<br>• **Inmate files appeal to Department Director with GC.**<br><br>*GC attaches all documentation and forwards to Department Director.* | **If inmate appeals**<br>• **5 working days**<br>• **Inmate files appeal to Department Director with GC.**<br><br>*GC attaches all documentation and forwards to Department Director.* |
| **DOC Medical/Dental Director**<br>• **20 working days**<br>• **Grant/deny/grant in part**<br><br>*GC gives response to inmate.* | **Department Director**<br>• **Legal review before final decision.**<br>• **20 working days**<br>• **Grant/deny/return to Warden / Facility Administrator for further review.**<br><br>*GC gives response to inmate.* | **Department Director**<br>• **HR review before final decision.**<br>• **20 working days**<br>• **Grant/deny/ return to Warden / Facility Administrator for further review.**<br><br>*GC gives response to inmate.* |
| **If inmate appeals**<br>• **5 working days**<br>• **Inmate files appeal to Department Director with GC.**<br><br>*GC attaches all documentation and forwards to Department Director.*<br><br>**Department Director**<br>• **20 working days**<br>• **Obtains Legal review**<br>• **Grant/deny/return to GC**<br><br>*GC gives response to inmate.*<br><br>This exhausts the available DOC administrative remedies | This exhausts the available DOC administrative remedies | This exhausts the available DOC administrative remedies |

Exhibit 11

# FORM TO BE USED BY PRISONERS FILING A

# PETITION FOR POSTCONVICTION RELIEF

# UNDER MONT. CODE ANN. § 46-21-101 et seq.

NAME _____

PRISON NUMBER _____

PLACE OF CONFINEMENT _____

CRIMINAL CAUSE NUMBER _____


_____, Petitioner,
(Full Name)

v.

STATE OF MONTANA, Respondent.


## Instructions

1.  The petition must be neatly handwritten or typed. You must tell the truth
    and sign the form. If you make a false statement of a material fact you
    may be prosecuted for perjury.

2.  You must attach affidavits, records, or other evidence establishing the
    facts to support your claims. You may use the FORM AFFIDAVIT IN
    SUPPORT OF A PETITION FOR POSTCONVICTION RELIEF or
    other records or evidence. Attach any documents you have that would
    support your claim(s).

3.  You must set forth all grounds for relief known to you at this time, along
    with the facts that support each ground. If you fail to set forth all the
    grounds in this petition you may be barred from presenting additional
    grounds at a later date. The most common grounds are (a) ineffective
    assistance of trial counsel; (b) ineffective assistance of appellate counsel
    and (c) the prosecutor withheld exculpatory evidence.

4.  You must also file a written memorandum explaining the grounds for relief. You may use the FORM MEMORANDUM IN SUPPORT OF THE PETITION FOR POSTCONVICTION RELIEF or prepare your own.

5.  You are not entitled to appointment of counsel in postconviction proceedings unless you are a poor person **and** the court determines that a hearing is necessary, or that the interests of justice require appointment of counsel. If, however, you are sentenced to death you are entitled to legal representation and should request the appointment of counsel.

6.  The petition must be filed in the district court in the county where you were convicted. When you have completed the forms, mail them to the clerk of the district court in the county where you were convicted. Also, mail a copy of the petition to each person listed on the Certificate of Service.

7.  In this petition, you may challenge the judgment entered by only one court. If you want to challenge judgments entered by different courts (either in this state or in different states) you have to file separate petitions.

8.  You must file for postconviction relief within one year of the date your conviction becomes final. Otherwise, the court has no authority to consider it. Use the following rules to determine when a conviction is final:

    (a)  If you appealed to the Montana Supreme Court, the conviction becomes final when the time for appealing to the U.S. Supreme Court expires. This is 90 days from the date the Montana Supreme Court's opinion was issued or, if a petition for rehearing was filed, 90 days from the date rehearing was denied.

    (b)  If you did not appeal to the Montana Supreme Court, the conviction becomes final when the time for appeal expires. This is 60 days from the date the written judgment is entered.

    (c)  If you appealed to the United States Supreme Court after an appeal to the Montana Supreme Court, the conviction becomes

final on the date that the U.S. Supreme Court issues its final order in the case.

9.    The only exception to the one-year filing deadline is where you have newly discovered evidence that proves you did not commit the criminal conduct for which you were convicted (see paragraph 8).  In that case, the petition must be filed within one year of the date the conviction becomes final, or within one year of the date when you discover the new evidence, whichever is later.

10.    You may amend your petition only once.  If you need to amend your original petition, you should do so as soon as you learn of the additional grounds for relief.


## PETITION FOR POSTCONVICTION RELIEF

1.    I was convicted of the following criminal offense(s):_____
_____
_____
_____

2.    Judgment on these offenses was entered on (date) _____.

3.    I received the following sentence: _____
_____
_____

4.    Check one: ( )      I pled guilty to these offenses
              ( )      I pled not guilty to these offenses.

NOTE:   If you are asking to withdraw your guilty plea you need to use the FORM FOR PRISONERS FILING A MOTION TO WITHDRAW PLEA OF GUILTY.

5.    Check one: ( )      I appealed to the Montana Supreme Court.
              ( )      I did not appeal to the Montana Supreme Court.

6.    Other than a direct appeal from the judgment of conviction, have you previously filed any petitions, applications or motions with respect to this judgment in any court, state or federal? (      ) Yes    (      ) No.

7.    If your answer to question 6 was yes, give the following information:

Name of Court: _____

Nature of Proceeding:_____

Grounds Raised: _____

_____

Result: _____

8.    I assert that I am entitled to postconviction relief upon the following claims:

GROUND ONE:_____

SUPPORTING FACTS:

GROUND TWO: _____

SUPPORTING FACTS:

GROUND THREE: _____

SUPPORTING FACTS:

(Additional grounds and supporting facts can be stated separately and attached to this petition).

9.   I have the following newly discovered evidence that proves I did not commit the criminal conduct for which I was convicted (complete this paragraph only if you missed the one-year filing deadline and are claiming that you have newly discovered evidence that proves your innocence):

_____

_____

_____

_____

_____

10.  I discovered this new evidence on (date)_____.

11.  I was represented by the following attorneys:

At trial: _____

At sentencing: _____

On appeal: _____

Petitioner prays that the court incorporate the criminal case file, appoint

counsel, order the State to respond, set an evidentiary hearing, and grant any other

relief to which Petitioner is entitled.


## VERIFICATION

STATE OF MONTANA )

                        : ss.

County of _____ )


I, the petitioner above named, states as follows:

I have read the foregoing petition for postconviction relief and know the

contents thereof, and the same is true of my own knowledge, information and

belief.

DATED this ____ day of _____, 20__.


_____

(Signature of Petitioner)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Petition for

Postconviction Relief, along with the Affidavit in Support of Petition for

Postconviction Relief and Memorandum in Support of Petition for Postconviction

Relief, were served by U.S. Mail upon the following:

Montana Attorney General
P.O. Box 201401
Helena, MT  59620


County Attorney
_____
(address)
_____

_____

# FORM MEMORANDUM TO BE USED BY PRISONERS FILING A

# PETITION FOR POSTCONVICTION RELIEF

NAME _____

PRISON NUMBER _____

PLACE OF CONFINEMENT _____

CRIMINAL CAUSE NUMBER _____


_____, Petitioner,
(Full Name)

v.

STATE OF MONTANA,  Respondent.


## Instructions

1. All petitions for postconviction relief must be accompanied by a legal memorandum.  Mont. Code Ann. § 46-21-104(2).  You may use this memorandum or create your own.

2. Below are some common claims for postconviction relief.  Check those that correspond to the grounds alleged in your petition.

3. If you have other grounds for relief alleged in your petition that are not covered here, you must include an additional memorandum addressing those grounds.  Additional memorandum must be legibly handwritten or typed, with appropriate arguments and citations and discussion of authorities.

<u>MEMORANDUM IN SUPPORT OF PETITION FOR
POSTCONVICTION RELIEF</u>

[     ]     INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL:

Criminal defendants are entitled the assistance of counsel at trial. This right

exists under the Montana Constitution, Article II, section 24, as well as the Sixth

Amendment of the United States Constitution. The Montana Supreme Court has

recognized that the right to counsel under the Montana Constitution is broader than

the right afforded by the United States Constitution. <u>State v. Spang</u>, 2002 MT 120,

¶22, 310 Mont. 52, ¶22, 48 P. 3d 727, ¶22 *citing* <u>State v. Johnson</u>, 221 Mont. 503,

514-515, 719 P. 2d 1248, 1255 (1986); <u>see also</u> <u>State v. Garcia</u>, 2003 MT 211, ¶37,

317 Mont. 73, ¶37, 75 P.3d 313, ¶37.

The right to counsel means the right to effective assistance of counsel. <u>State

v. Rogers</u>, 2001 MT 165, ¶7, 306 Mont. 130, ¶7, 32 P. 3d 724, ¶7, *citing* <u>Strickland

v. Washington</u>, 466 U.S. 668, 686 (1984). "The effective assistance of counsel is

critical to our adversarial system of justice; a lack of effective counsel may

impinge the fundamental fairness of the proceeding being challenged." <u>State v.

Henderson</u>, 2004 MT 173, ¶4, 322 Mont. 69, ¶4, 93 P. 3d 1231, ¶4. Whether

counsel's representation is constitutionally sound is analyzed under the two-part

standard from <u>Strickland v. Washington</u>, *supra*.

Under the first prong, a criminal defendant is denied effective assistance of

counsel if: (1) his counsel's conduct falls short of the range reasonably demanded

in light of the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. State v. Jefferson, 2003 MT 90, ¶43, 315 Mont. 146, ¶43, 69 P.3d 641, ¶43. Under the second prong, the defendant must show a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Rogers, ¶14. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome', but it does not require that a defendant demonstrate that he would have been acquitted." Id. (citation omitted).

Generally, the defendant must establish both prongs of the Strickland standard to prevail. State v. Jones, 278 Mont. 121, 133, 923 P.2d 560, 567 (1996). However, in some cases counsel's performance is so deficient a presumption of ineffectiveness arises and proving the second prong becomes unnecessary. United States v. Cronic, 466 U.S. 648, 660 (1984) "[O]nly when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." Cronic, 466 U.S. at 661. The Montana Supreme Court has recognized that an irreconcilable conflict between attorney and client constitutes the type of situation that gives rise to a presumption of prejudice. Wilson v. State, 1999 MT 271, ¶17, 296 Mont. 465, ¶17, 989 P.2d 813, ¶17

In situations in which a conflict of interest exists between counsel and the defendant, a third test applies. In conflict of interest cases a defendant must show: (1) that counsel actively represented conflicting interests, and (2) that an actual conflict of interest adversely affected counsel's performance. State v. Christenson, 250 Mont. 351, 355, 820 P.2d 1303, 1306 (1991) (*citing* Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). Where an ineffective assistance of counsel claim is based on a conflict of interest, rather than lack of reasonable competence, prejudice is presumed if the defendant satisfies both prongs of the Cuyler test. Prejudice is presumed "since the harm may not consist solely of what counsel does, but of 'what the advocate finds himself compelled to refrain from doing." Sanders v. Ratelle, 21 F.3d 1446, 1452 (9th Cir. 1994), *quoting* Holloway v. Arkansas, 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978).

Petitioner asserts that counsel was ineffective. The facts in support of this claim are set forth in the Petition for Postconviction Relief and supporting affidavit.

[     ]     INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

In Montana, the right to counsel on appeal includes the right to effective assistance of counsel." Hans v. State 283 Mont. 379, 408, 942 P.2d 674, *692* (1997)(*citing* Anders v. California, 386 U.S. 738, (1967).  Failure to preserve a defendant's right to appeal when the defendant has requested notice be filed is error.  State v. Rogers, 2001 MT 165,¶24, 306 Mont. 130, ¶24, 32 P.3d 724, ¶24 (*citing* Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)).  Moreover, when, but for counsel's deficient performance, a defendant would have appealed, such error is prejudicial. Rogers, ¶24 (citing Roe, 528 U.S. at 484).

The remedy for the abandonment of an appeal by counsel is a petition for postconviction relief.  In the petition, the defendant is allowed to raise all claims that were foreclosed by the abandonment and all claims that are typically raised in a petition for postconviction relief.  Petition of Hans, 1998 MT 7, ¶19, 288 Mont. 168, ¶19, 958 P.2d 1175 ¶19.  When defense counsel failed to preserve the defendant's right to appeal, the interests of justice require that counsel be appointed to assist him throughout his postconviction proceedings.  State v. Adams, 2002 MT 202, ¶20, 311 Mont. 202, ¶20, 54 P.3d 50, ¶20.

Petitioner asserts that appellate counsel was ineffective for failing to preserve the right of appeal.  The facts in support of this claim are set forth in the Petition for Postconviction Relief and supporting affidavit.

[      ]FAILURE OF THE PROSECUTOR TO DISCLOSE MATERIAL
         EVIDENCE.

The State has several affirmative duties to disclose evidence to a defendant.
Pursuant to the Due Process Clause of the United States Constitution, the
prosecution must disclose all evidence favorable to the accused that is material to
either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 86-87 (1963)
("suppression by the prosecution of evidence favorable to an accused upon request
violates due process where the evidence is material either to guilt or to punishment,
irrespective of the good faith or bad faith of the prosecution."). Second, Montana
has adopted a statutory scheme that places affirmative duties on both the State and
a defendant. State v. Stewart, 2000 MT 379, ¶21, 303 Mont. 507, ¶21, 16 P.3d 391,
¶21, citing §46-15-322, MCA.

Unlike Brady, Montana's statutory requirements do not hinge on whether the
evidence is exculpatory or inculpatory. The plain language of §46-15-327, MCA,
simply mandates that the State disclose all additional information or material
within the State's possession. Stewart, ¶23. The duty to discover favorable
evidence, even in possession of the police or other's acting on the government's
behalf, rests with the prosecutor. "But whether the prosecutor succeeds or fails in
meeting this obligation (whether, that is, a failure to disclose in good faith or bad
faith (citation omitted)) the prosecution's responsibility for failing to disclose

known, favorable evidence rising to a material level of importance is inescapable."
Kyles v. Whitley, 514 U.S. 419, 437-38. (1995).

Evidence is material if there is a reasonable probability that the result would have been different had the evidence been disclosed to the defense. Strickler v. Greene, 527 U.S. 263, 289- 90 (1999). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " Kyles, 514 U.S. at 434. Thus, the prosecutorial duty to disclose favorable material evidence encompasses impeachment evidence. United States v. Bagley, 473 U.S. 667 (1985).

Petitioner alleges that the prosecutor failed to disclose material evidence, and that there is a reasonable probability that the result would have been different had the evidence been disclosed to the defendant. The facts in support of this claim are set forth in the Petition for Postconviction Relief and supporting affidavit.

## CONCLUSION

Petitioner requests that this Court order a responsive pleading from the State responding to these allegations. Petitioner further requests that the Court appoint counsel, set an evidentiary hearing, and grant postconviction relief and any other relief to which Petitioner is entitled.

AFFIDAVIT TO BE USED BY PRISONERS FILING A

PETITION FOR POSTCONVICTION RELIEF

UNDER MONT. CODE ANN. § 46-21-101 et seq.

NAME _____

PRISON NUMBER _____

PLACE OF CONFINEMENT _____


_____, Petitioner,
(Full Name)

v.

STATE OF MONTANA, Respondent.


## Instructions

1. Use this affidavit to comply with Mont. Code Ann. § 46-21-104(1)(c), which requires that petitions for postconviction relief be supported by affidavits, records, or other evidence.

2. The affidavit must be legibly handwritten or typed. You must tell the truth and sign the affidavit. If you make a false statement of a material fact you may be prosecuted for perjury.

3. Attach the affidavit to your postconviction petition and follow the mailing and service instructions in the PETITION FOR POSTCONVICTION RELIEF.

## AFFIDAVIT IN SUPPORT OF
## PETITION FOR POSTCONVICTION RELIEF

I, _____, being first duly sworn, depose and say that

I am the Petitioner in the above-entitled case; that in support of my petition for

postconviction relief I re-allege the supporting facts in support of my petition for

postconviction relief as follows:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

DATED this ____ day of _____, 20___.

       SIGNATURE:_____

SUBSCRIBED AND SWORN to before me this ____ day of

_____, 200 ___.

          _____
          Signature notary

          _____
(SEAL)         Name – typed, stamped or printed
          Notary Public for the State of Montana
          Residing at _____
          My commission expires _____