IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| RICHARD D. REINERT, JR., | CV-21-39-GF-BMM |
| Plaintiff, | |
| vs. | ORDER |
| STATE OF MONTANA, DIRECTOR OF DEPT. OF CORRECTIONS, DIRECTOR OF MONTANA STATE PRISON, CEO OF CORE CIVIC, WARDEN, MONTANA STATE PRISON, and FENDER and BLUDWORTH, WARDEN OF CROSSROADS CORRECTIONAL, | |
| Defendants. | |

Plaintiff Richard D. Reinert, Jr. has filed a Complaint alleging various constitutional claims regarding his access to the courts while incarcerated. (Doc. 2).

## I. STATEMENT OF THE CASE

### A.    Parties

Reinert is a state prisoner incarcerated at Crossroads Correctional Montana State Prison ("CC").  He is proceeding in forma pauperis and without counsel.  He

names the following Defendants:  the State of Montana; John Doe[1], Director of

Montana Department of Corrections ("DOC"); John Doe, Director of Montana

State Prison; John Doe, CEO of CoreCivic; CoreCivic Wardens Fender, McTighe,

and Bludworth; John Doe, Montana State Prison Warden; Ms. Kenya/Alstead,

DOC Bed Monitor at CC; Brian Hodges, Unit Manager at CC; Mr. Christians, Unit

Manager at CC; Brent Madrid, Chief of Security at CC; Mr. Long, Chief of

Security at CC; Mr. Henson, Chief of Unit Management at CC; Mrs. Simons,

Quality Control at CC; Susan Kloos, Corrections Counselor at CC; and Christy

Atikenu, Counselor/Case Manager at CC.  (Docs. 2 at 5; 2-1 at 1.)

## B.  Allegations

Reinert alleges three claims regarding denial of access to the courts. (Doc. 2-

1.) Claim one arose from October 2017 – May 2018. Reinert asserts violations of

the First, Fifth, and Fourteenth Amendments. (Doc. 2-2 at 1.) Reinert alleges that

he was denied access to the courts while he was litigating a previous action in this

Court. In particular, he asserts that he received digital copies of various discovery

in that litigation on CDs, DVDs, and a flash drive, but he was unable to view the

materials and was forced to mail them out. He names Defendant Kloos as the

person who opened the package and told him that he could not possess these items.

---

[1] Reinert does not himself identify the unknown defendants as John Does but only
by occupation. The Court uses Doe here for clarity.

(Doc. 2-2 at 1.) Reinert had to pay to have the materials shipped out of CC. A week later, Defendant Atikenu also required Reinert to ship out some discovery materials.

Reinert sought assistance from this Court, which required the defendants in that litigation to assist Reinert in viewing the discovery. Reinert alleges that Defendant Madrid obstructed the process. The deadline for amendments to pleadings eventually passed, and Reinert could not amend his claims to name the proper defendants. He lost his case on summary judgment. Reinert contends that if he had been able to view his discovery when he received it, he would have amended his complaint to properly allege his claims, and, implicitly, he might have prevailed on those claims. (Doc. 2-2 at 2.)

Reinert's second access to the courts claim arises out of his attempt to file a petition for post-conviction relief in Montana state court. (Doc. 2-2 at 6.) Reinert asserts that he had only three hours of Lexis/Nexis research time per week, access only to old Montana Code volumes, few typewriters, no access to digital discovery, and no method for including digital discovery with his court filings. *Id.* He also asserts that CC provides no litigation assistance and imposes oppressive costs on inmates for copying and mailing. Reinert contends that the denial of his post-conviction petition was "a direct result of the limited access to the courts resulting from" his incarceration at CC. (Doc. 2-2 at 6-7.) He argues that the prison must

allow prisoners access to the electronic means that lawyers have, if the courts are going to hold them to the same standards.

Reinert's final claim alleges that the form approved by the Montana Legislature to be used by prisoners in filing their petitions for postconviction relief is fundamentally flawed. Reinert asserts that if a prisoner uses the standard memorandum that accompanies these forms, the prisoner will lose, even if their claims are meritorious. (Doc. 2-2 at 13.) Reinert used these materials as an outline and added his own case law, arguments and information. The court denied his petition, and he asserts that the form "should be ruled as unconstitutional." (Doc. 2-2 at 14.)

After asserting these three claims, Reinert asks the Court to stay this litigation while he pursues his federal habeas relief. (Doc. 2-5.) Reinert was mindful of the fact that the statute of limitations was about to run on his first claim, which arose at the latest in May of 2018.

## II.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

Reinert is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. §§ 1915, 1915A.  Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2).  That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

A two-step procedure exists to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662.  First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680.  Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a

constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations that are accepted as true "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations that are accepted as true "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (*citing* Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## A. Analysis

Inmates possess a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right includes "both a right to

meaningful access to the courts and a broader right to petition the government for a redress of his grievances." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds as stated by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). Thus, there are two types of access to the courts claims: "those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference." *Silva*, 658 F.3d at 1102.

Reinert asserts the second type of claim, the right to litigate without active interference, which arises under the First and Fourteenth Amendments. *Silva v. Di Vittorio*, 658 F.3d 1090, 1102-3 (9th Cir. 2011). His Claims 1 and 2 assert that the policies at CC, in particular Policy 14-8, prevent him from being able to litigate his claims successfully.

1. Claim 1

Reinert's Claim 1 states a claim for plausible interference with his ability to litigate. (The Court will not consider, without greater development of the record, whether the claim is barred by the statute of limitations.) Reinert has named individual defendants who are not subject to suit on this claim.

The State of Montana remains immune from suit. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State."  U.S. Const. Amend. XI; *see also Edelman v. Jordan*, 415 U.S.

651, 664 (1974). The United States Supreme Court has interpreted this amendment

to mean that absent waiver, neither a State nor an agency of the State acting under

its control may "be subject to suit in federal court." *Puerto Rico Aqueduct &*

*Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The State of

Montana has waived immunity only for tort claims brought in state court. Mont.

Code Ann. § 2-9-101 et seq. No claim against the State of Montana alleged by

Reinert can be brought in federal court.

One exception to the general prohibition of the Eleventh Amendment is that

it does not bar suits for prospective declaratory or injunctive relief against state

officials in their official capacity.  *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261

(1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-106 (1984);

*Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997);

*Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997) *cert. denied*, 118 S.Ct.

2340 (1998). Reinert has named the Director of the Department of Corrections as

responsible for Policy 1408, among others. Though Reinert did not name this

person in his or her official capacity, the Court will construe that, as that represents

the only available form in which the suit may proceed against the Director of the

DOC. The Court will allow that claim to proceed.

Reinert appears to name several defendants on a supervisory liability theory.

(Doc. 2-1 at 22.) Section 1983 will not impose liability on supervising officers,

however, under a respondeat superior theory of liability. *Monell v. Dep't of Soc.*

*Servs. of City of New York*, 436 U.S. 658, 691-94. That is, a defendant will not be

held liable just because they oversee the State, a prison, or the Department of

Corrections. Instead, supervising officers can be held liable under section 1983

"only if they play an affirmative part in the alleged deprivation of constitutional

rights." *King v. Atiyeh*, 814 F. 2d 565, 568 (9th Cir. 1987).

The Ninth Circuit has identified four general situations in which supervisory

liability may be imposed:

> "for his own culpable action or inaction in the training, supervision, or
> control of his subordinates, for his acquiescence in the constitutional
> deprivations of which the complaint is made, or for conduct that showed a
> reckless or callous indifference to the rights of others. … In a section 1983
> claim, a supervisor is liable for the acts of his subordinates if the supervisor
> participated in or directed the violations, or knew of the violations of
> subordinates and failed to act to prevent them. The requisite causal
> connection may be established when an official sets in motion a 'series of
> acts by others which the actor knows or reasonably should know would
> cause others to inflict' constitutional harms."

*Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal citations and

quotation omitted.) Reinert has alleged no facts that would support this kind of

supervisory liability against the CEO of Core Civic, the Director of MSP and the

Warden of MSP, all of whom are unlikely to have developed the policy regarding

electronic resources at CC, or to have had any involvement in the day-to-day operation of CC. If he can amend his complaint to demonstrate their personal involvement, he may do so, but at this point, he fails to state a claim against them, and they will be dismissed.

Finally, Reinert has made no allegations against Mrs. Simons, Quality Control at CC. She also will be dismissed.

2.  Claim 2

Reinert's second claim again asserts that his CC interfered with his ability to litigate, but focuses this time on more practical matters, such as his limited access to LEXIS/NEXIS, the high copying and mailing fees, and the inability to access or file digital discovery. (Doc. 2-2 at 6.) These hurdles, in themselves, do not state an access to the courts claim without a demonstrable injury. Reinert asserts that the denial of his petition for post-conviction relief in state court was a direct result of the constraints on him posed by incarceration at CC. It is not entirely clear how those constraints manifested in the denial of petition, but he alleges that both the Montana District Court and Montana Supreme Court denied his petition, in part, because of how the policies at CC impacted his ability to litigate. Reinert names the same defendants on this claim, and for the reasons outlined above, the same certain defendants will be dismissed.

The procedural posture of this claim poses a dilemma for the Court, because Reinert's claims come close to seeking federal court review of a state court post-conviction relief determination. The Court cannot determine that his right of access was impermissibly curtailed without evaluating the merits of the state court decision. The Court declines to do so. *Heck v. Humphrey*, 512 U.S. 477 (1994). Reinert himself seeks a stay in this matter pending the resolution of his federal habeas petition. (Doc. 2-5.) The Court will stay this matter and defer consideration of whether this claim should be dismissed until after the federal habeas proceedings are completed.

3. Claim 3

Reinert directs his third claim solely at the "State of Montana, Legislature, Governor, and Judicial System." Doc. 2-2 at 15. Reinert alleges that the state court system is "not following the law as written by the Legislature," because the form post-conviction petition provided by statute always results in denials. Reinert's ire appears particularly directed at the insufficiency of the form itself, not the actual statute passed by the Legislature. It is not clear to the Court where this form originated. The statute does not refer to the form. (Mont. Code. Ann. § 46-21-101 et seq.) Reinert points to the denial of his own PCR as evidence that the form is flawed. Reinert wants Montana's post-conviction process to be declared unconstitutional, and an order directing Montana to create a "Conviction Integrity

Unit" to help incarcerated persons file collateral attacks upon their convictions. (Doc. 2-4 at 3.)

This claim is not justiciable in this Court. Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to justiciable "cases" and "controversies." U.S. Const., Art. III, § 2. Claim 3: In *Baker v. Carr,* the U.S. Supreme Court described two instances in which a court declines jurisdiction, either in the case of failure to have subject matter jurisdiction because the case does not arise under the Constitution (or laws), and non-justiciablity, because though it might state a claim, there are other reasons why judicial power should not be exercised. Reneirt's claim fails in both regards. *Baker v. Carr*, 369 U.S. 186, 198-99 (1962).

First, this claim does not arise under the Constitution or laws of the United States. Reinert has not alleged how Montana's law is unconstitutional. Reinert claims the form itself comes from the Montana Legislature, but the law that he cites does not in itself create the form. Neither has he alleged how the state courts are acting unconstitutionally. The Legislature, the State, and the court system do not constitute "persons" amenable to suit within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). These failures to state a claim could not be amended by adding factual allegations, because Reinert's claim is also otherwise non-justiciable.

The U.S. Supreme Court has held that for a case to meet the justiciability requirements for federal subject-matter jurisdiction, a plaintiff must show (1) standing; (2) that the case is ripe; (3) the case is not moot; and (4) the case does not involve a political question. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). Rule 12(h)(3) requires that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." See *Kontrick v. Ryan,* 540 U.S. 443, 455 (2004). Reinert's Claim 3 fails this test.

First, Reinert likely lacks standing on this claim. He alleges that he modified the form substantially before filing his own petition. As stated above, the Court could not conclude whether his post-conviction petition was properly denied in state court, but even if the form were found to be unconstitutional, as he asserts, his modifications of it altered the situation as far as he is concerned. Relatedly, as his post-conviction petition has already been denied in state court, his claim here is moot. A previously litigated petition that did not rely solely on the form is a resolved claim that cannot be remedied by the relief that he seeks here.

## III.  CONCLUSION

Reinert's Claims 1 and 2 survive prescreening, but will be stayed. Reinert's Claim 3 will be dismissed.

At all times during the pendency of this action, Reinert immediately must advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based upon the foregoing, the Court issues the following:

## ORDER

1. The following defendants are dismissed from this action, and the Clerk of Court is directed to terminate them as parties: the State of Montana, the Montana Legislature, the Governor of Montana, Mrs. Simons, the Warden at MSP, the Director of MSP, and CEO of CoreCivic.

2. Reinert's Claim 3 is dismissed. Claims 1 and 2 are stayed pending the outcome of Reinert's federal habeas action. Reinert is directed to file a notice in this case every six months advising the status of that litigation.

Dated this 4th day of October, 2021.

Brian Morris, Chief District Judge
United States District Court